

NUMBER 13-07-234-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

---

SAMANTHA BARBERA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

---

On appeal from the 411th District Court
of San Jacinto County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela**
**Memorandum Opinion by Justice Vela**

A jury found appellant, Samantha Barbera, guilty of the offense of injury to a child,[1]

and the trial court assessed punishment at four years in prison. By two issues, Barbera

---

[1]*See* TEX. PENAL CODE ANN. § 22.04(a)(3) (Vernon Supp. 2008).

argues the trial court erred in denying her request for a limiting instruction and in denying her motion for mistrial. We affirm.

## I. Factual Background

Barbera does not challenge the legal or factual sufficiency of the evidence to support her conviction. Because the background and facts are pertinent to the issues, however, we shall review the applicable facts.

*A. State's Evidence*

On May 8, 2006, thirteen-year-old S.P. and her eight-year-old brother went to a grocery store in Shepherd, Texas to buy some sugar for their mother, Michelle Hoffpauir. When they left the store, they saw Barbera, naked, getting out of a car. She yelled and cussed at S.P., and the children told their mother what had happened. Hoffpauir and S.P. went to the store and saw Barbera, now wearing clothes, going into the store. Hoffpauir asked Barbera if she had cussed at S.P. S.P. testified that at this point, Barbera "started coming at me; and my mom stepped in her way. And when she did, she hit my mom in the chest. Well, then, my mom, like, shoved her away; and when she did that, her and my mom started getting into it." Barbera's boyfriend, Brian Vancauwenbergh, grabbed Hoffpauir from behind and held her while Barbera hit her. When S.P. tried to pull Barbera away, Brian "backhanded" S.P. on the mouth, and Barbera slapped and hit S.P.'s face. Finally, Lois Graves, an employee at the store, started hitting Brian with her phone. Unable to break up the fight, Graves called the police, and the assailants left in their car.

Graves did not see either Brian or Barbera hit S.P. However, Graves testified that "[S.P.] was red-faced like she, you know, may have been slapped or hit. . . ." S.P. said that Barbera had slapped her with an open hand and hit her with a closed fist. As a result, she suffered a "busted" lip and bruised jaws. Hoffpauir testified that Brian slapped S.P. and

2

that Barbera "started fighting with [S.P.] and hitting her."  She testified that, "I know she [Barbera] was hitting her [S.P.] all over, but mostly she was hitting her in the face."  She said that S.P. suffered a bruise on her jawline, several bruises on her arms, and her mouth "had gotten busted . . . ."

*B. Appellant's Evidence*

Brian Vancauwenbergh testified he and Barbera had been swimming together at Dolen River Bridge prior to their encounter with Hoffpauir.  They stopped at the store to grab a couple of beers before going to Brian's house.  He testified that a "fight broke out" between Barbera and Hoffpauir, but he did not see Barbera strike S.P.  He denied slapping S.P.

Barbera did not testify.

## II. Discussion

*A. Limiting Instruction*

By issue one, Barbera argues the trial court erred in denying her request for a limiting instruction.  During the State's direct-examination of Lois Graves, the prosecutor asked her:  "And did you have a chance to witness an assault happening outside of your store that same day?"  She replied:  "I went to put the beer back into the cooler, and I was going to look–."  At that point, the court held a bench conference during which counsel told the court that the prosecutor was about to elicit evidence of an extraneous offense.  Counsel requested the court to immediately give the jury a limiting instruction that "they [the jury] have to find beyond a reasonable doubt that she [Barbera] committed the other offense before they can consider it for any purpose."  The court denied the request, and Graves testified she saw Brian holding Hoffpauir's arms back while Barbera punched and hit her.

3

A defendant is entitled to an instruction limiting the jury's use of an extraneous offense not only in the jury charge but also at the time the evidence is admitted, if such an instruction is timely requested by the accused. *Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996); *see also* TEX. R. EVID. 105(a).[2]  However, extraneous evidence constituting the "same transaction contextual evidence" is admissible without a limiting instruction.  *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).  "Such extraneous offenses are admissible to show the context in which the criminal act occurred." *Id*.; *Archer v. State*, 607 S.W.2d 539, 542 (Tex. Crim. App. 1980).  This evidence is considered *res gestae*, under the reasoning that events do not happen in a vacuum, and the jury has the right to hear what happened immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence.  *Wesbrook*, 29 S.W.3d at 115.

In this case, Barbera's conduct of hitting and punching Hoffpauir is *res gestae* because it happened immediately prior to Barbera's act of slapping and hitting S.P. Accordingly, the evidence is "same transaction contextual evidence"[3] and is admissible

---

[2]Rule of Evidence 105(a) provides that, when evidence which is admissible for only a limited purpose is admitted, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal."  TEX. R. EVID. 105(a).

[3]*See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (holding evidence that defendant committed three other homicides on night of charged homicide constituted same transaction contextual evidence); *Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000) (holding evidence that defendant sexually assaulted child before smothering child constituted same transaction contextual evidence); *Moreno v. State*, 195 S.W.3d 321, 327 (Tex. App.–Houston [14th Dist.] 2006, pet. ref'd) (holding evidence that defendant completed several other drug deals in days before charged offense constituted same transaction contextual evidence); *Nguyen v. State,* 177 S.W.3d 659, 667 (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd) (holding evidence that defendant was involved in homicide was same transaction contextual evidence to charged offense of insurance fraud); *Heiman v. State,* 923 S.W.2d 622, 626 (Tex. App.–Houston [1st Dist.] 1995, pet. ref'd) (holding evidence that defendant injected cocaine into himself and victim at time of offense of indecency with child constituted same transaction contextual evidence).

without a limiting instruction.[4]  *See Wesbrook,* 29 S.W.3d at 115.  Issue one is overruled.

*B. Motion for Mistrial*

In issue two, Barbera argues the trial court erred in denying her request for a mistrial when Deputy Chad Whitten gave improper opinion testimony that she had committed the offense of injury to a child.  During the guilt-innocence stage, the prosecutor questioned Deputy Whitten, the lead investigator in this case, as follows:

> Q.    Now, Officer, based on your investigation did an offense happen against [S.P.] that day?
>
> A.    Yes it did.
>
> Q.    What was that offense?
>
> A.    Injury to a child.

At this point, counsel objected, stating "[t]hat's a conclusion, a legal conclusion."  The trial court sustained the objection and upon counsel's request, instructed the jury as follows:  "The jury is instructed to disregard the last statement of this witness."  The court denied counsel's motion for a mistrial.

*1. Applicable Law*

We review the denial of a motion for mistrial under an abuse of discretion standard.  *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004); *Davis v. State*, 177 S.W.3d 355, 363 (Tex. App.–Houston [1st Dist.] 2005, no pet.).  Under this standard, an

---

[4]Even though the trial court did not provide a limiting instruction contemporaneous with the admission of the testimony, the court did provide a limiting instruction in its guilt-innocence charge:

> The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case.  This evidence was admitted only for the purpose of assisting you, if it does, for the purpose of showing the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if any.  You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any were committed.

5

appellate court must uphold the trial court's ruling as long as the ruling was within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). When objectionable testimony is elicited, inadvertently or deliberately, an appellate court presumes a jury will follow instructions to disregard the evidence. *Drake v. State*, 123 S.W.3d 596, 604 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd); *see Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987). Thus, a trial court properly exercises its discretion to declare a mistrial when, due to the error, an impartial verdict cannot be reached or a conviction would have to be reversed on appeal due to "an obvious procedural error." *Wood*, 18 S.W.3d at 648. When, as here, the trial court instructs the jury to disregard, but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion in denying a mistrial. *Hawkins*, 135 S.W.3d at 77. In determining whether the trial court abused its discretion in denying the mistrial, we balance three factors: (1) the severity of the misconduct (prejudicial effect); (2) curative measures; and (3) the certainty of conviction absent the misconduct. *Id*. at 75. Only in extreme circumstances, when the prejudice is incurable or the comment is "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Id*. at 77.

2. *Analysis*

a. *Prejudicial Effect*

The prosecutor asked Deputy Whitten whether, based on his investigation, "an

offense happened against [S.P.] that day?" He answered affirmatively, but he did not connect Barbera to the offense. Moreover, the prosecutor did not ask, and Deputy Whitten did not say, whether he thought Barbera was guilty of the offense of injury to a child. Thus, Deputy Whitten's testimony had little, if any, prejudicial effect.

### b. Curative Measure

The trial court instructed the jury to disregard Deputy Whitten's "last statement.-" We ordinarily assume that an instruction to disregard cures any harm flowing from the error. *Martinez v. State*, 17 S.W.3d 677, 691 (Tex. Crim. App. 2000). Beyond that general assumption, however, we note that Deputy Whitten's testimony was not so inflammatory that an instruction to disregard it could not have cured the error.

### c. Certainty of Conviction Absent the Misconduct

S.P. testified that Barbera slapped and hit her in the face. As a result, she suffered a "busted" lip and bruised jaws. Hoffpauir testified: "I know she [Barbera] was hitting her [S.P.] all over, but mostly she was hitting her in the face." Hoffpauir said that S.P. suffered a bruise on her jawline, several bruises on her arms, and her mouth "had gotten busted . . . ." Graves did not see anyone hit S.P., but she testified that "[S.P.] was red-faced like she, you know, may have been slapped or hit. . . ." Brian did not see Barbera strike S.P., and he denied slapping her.

Absent Deputy Whitten's complained-of response, the certainty of conviction is strong. After balancing the three *Hawkins* factors, we hold that any possible harm caused by Deputy Whitten's testimony was cured by the trial court's instruction and that the trial court did not err by denying the motion for mistrial. *See Drake*, 123 S.W.3d at 603-04 (holding that jury could follow instruction to disregard State's reference to defendant's

7

"many burglaries"); *see also Ladd*, 3 S.W.3d at 567 (grant of a mistrial is proper "when error is so prejudicial that expenditure of further time and expense would be wasteful and futile"). Issue two is overruled.

## IV. Conclusion

We affirm the trial court's judgment.


ROSE VELA
Justice


Do not publish.
Tᴇx. R. Aᴘᴘ. P. 47.2(b).

Memorandum Opinion delivered and
filed this 28th day of August, 2008.